May it please the Court, my name is Jeffrey Wellens, counsel for the petitioners, for the appellates here. We were requested to provide supplemental briefing on the race judicata issue, and we did submit that. I believe that that's a pretty good discussion of the issue, and it explains that in this unusual circumstance of an anti-SLAPP motion being granted to the original complaint, under California law, the race judicata doctrine cannot apply. Well, I find that difficult to understand. I mean, you're basically saying that because you didn't put it in your original complaint, even though you could have, and because the procedure doesn't allow you to amend it later, it can't be race judicata, but you could have put it in the original complaint, and you didn't. That's true, but there's no requirement under California law, and in fact it's to the contrary, to put every possible claim in your original complaint. But your preclusion, if there is one, is essentially a procedural one. It's not because you couldn't have pled it and litigated it. It's not the mere possibility that it could have been pled that is at issue in a race judicata consideration. It's whether there was a reasonable opportunity to plead it. And there wasn't a reasonable opportunity to put the recall claim in the beginning one? Absolutely not, because it would not be a reasonable practice to file a lawsuit in state court and to add every conceivable federal law claim you might have in the initial complaint, just because there's a mere possibility that someone might file the only motion you can file under California law that freezes the entire lawsuit and freezes the complaint essentially as well. Well, wouldn't it have been a big mystery to a California lawyer that this was going to generate a slap motion? Well, Your Honor, you could be cynical and say that practically everything generates slap motions these days in California, and that might be true. But the fact is, whether it's theoretically possible or not, or even likely, is not the issue. Okay, but I have a different question, which is this. The California judgment was actually the second judgment. Is that right? I'm not sure what you mean by that. I mean the federal district court judgment was first. Is that right? No, Your Honor. I believe that the California judgment was entered. The trial court. But there's a – we have this very strange situation where they have different rules about what's the judgment that's entitled to preclusive effect. Right. So the judgment – the federal court judgment that was entitled to preclusive effect was entered before the state court judgment that was entitled to preclusive effect. No, the only judgment that was entitled to preclusive effect would be after the appeals had been exhausted. Not in federal court. There was already an appeal pending in state court. Right. And they did not take the – I'm supposed to help you, so listen to Carl. Listen to Carl, okay? What I'm trying to figure out is this is a very peculiar situation, because the – I believe, and there may be arguments against this, but I believe that given the way federal and state preclusion works, that you had a judgment in federal court before you had a judgment in state court, because the state court judgment has to be in the appellate judgment, whereas the federal court judgment is the trial court judgment. Okay. So what do we do with res judicata under those circumstances? Well, res judicata would not apply if at the time there was a – the federal court made its decision and it decided the issue, and that's what we're appealing today, only the federal claims. The state court judgment wasn't final when that was made. If the district court decision is a final judgment, then there was no existing state court judgment at the time that was made that's final, and therefore the federal court is preclusive of the state court and not the other way around. Okay, but you didn't claim that in state court, so the state court went ahead and decided it. That's right. So now what do we do next? Well, it would be for – it would be for them to have claimed that in state court, that the state court appeal was moot or could not proceed because the federal court had already thrown out. It would have been for you to claim that the federal court judgment was preclusive in the state appeal, which you didn't do. Well, I filed the appeal. I could hardly claim that it was a – Why couldn't it be preclusive, the answer to it? I lost the case. I see, because you lost both cases. I lost both cases. You're right. Okay. That's right. So what difference does it make if it wasn't preclusive then because the district court judgment was, quote, final, close quote, subject to being made unfinal by us, if we were to reverse it? Now, let's say we reverse the district court. Isn't the state court of appeal decision the first final decision then? Because the district court – If we reverse, the district court couldn't conceivably be a final decision. It's reversed. And now there's a final state court decision. Well, if you reverse on the grounds that we stated a viable cause of action under RICO, then that case would proceed to trial in the federal court because – Well, not if race judicata bars it. So we're back to your first argument, that race judicata can't bar it, never mind the cul-de-sac or the side issue we've taken out. Isn't that what you're saying? Well, I'm not. I'm responding to a question, Your Honor, Judge Berzon, and that's – that the district court will be preclusive if we reverse it? I don't have an answer to that, frankly. It hasn't something I've even contemplated because I did approach the case a little bit differently in submitting my papers. I don't think you need to really unravel that puzzle because the fact is that race judicata has never been applied in a California – in a state where there was no opportunity to amend a complaint. Is there a case law saying that it's not applied under those circumstances? There's case law saying that the person – that the plaintiff must have a reasonable opportunity to litigate. Okay. But what about the failure to be able to amend long after the case was filed? Is that not a reasonable opportunity to amend if he could have filed in the first place? Is there any case law saying that? There's case law saying that the plaintiff must be given leave to amend. Right. And if that case law is defeated by a failure to give leave to amend, then it would seem to me that it would logically follow that there would be no race judicata effect because there was no reasonable opportunity to amend. The anti-SLAPP law is an unusual procedure in the sense of freezing the case. I return to my original point, though. What are we saying here that you have to bring a federal claim every time you file a state court lawsuit because an anti-SLAPP motion must be filed? You have to bring up federal court action if you want to litigate it. I mean, ordinarily, people go into court and say, I just didn't want to litigate. There are alternative theories, and maybe we didn't want to go to federal court if we could avoid it. There was a possibility of – Right. So you should have filed it at the outset. You certainly could have filed it. But it's one thing to say you should have from a tactical quarterback, Monday morning quarterback, 2020 hindsight perspective. But now we're talking about – All right. Suppose a state court had a rule that said you can't amend a complaint after 40 days. That wouldn't preclude race judicata of something that you didn't amend after 40 days, right? Even if there were new facts you couldn't amend? I would say a rule like that probably would be very questionable and would not – might well not – might well result in injustices. And there is an injustice exception. Whether you talk about saying – whether you express it in terms of a reasonable opportunity to plead a claim or you express it in terms of the injustice exception, it amounts to the same thing. Maybe we made a mistake, but is it grossly unfair and inequitable to have – to essentially say you're required to plead a federal claim in your original state court lawsuit with all that would it possibly entail in terms of a burden on the federal court? With a bunch of cases being removed that maybe they would have never gotten removed. Maybe the initial demur or whatever is overruled. The case proceeds in state court. There's no intention or need to go to a federal claim at all. People should be able to have the ability to plead alternative theories during the course of litigation without having to do them all in the initial pleading. That's the rule – the reason we have a very liberal rule in state court and federal court allowing amendments of the complaint and a relation back doctrine that applies to that as well. Do you – I think the merits of this case are very interesting, too, and I think it would be helpful if you addressed them. I hope we can get to that, actually. The merits of this case essentially present a question of first impression to the Ninth Circuit, which is whether the Ninth Circuit should adopt the rule set forth by the Tenth Circuit in the Curd students' case, which we argue obviously it should. And the reason is that the right of petition, which is what we're talking about here, not the antitrust context. There's nothing about this case that has anything to do with antitrust law. The right of petition is a right to lobby, seek relief from the government. It is not the right to attempt to collect money from a private citizen in a purely private dispute. I have a conceptual problem here, and it may be too complicated to answer right now. But, well, first of all, we do have case law that seems to treat Nora Pennington as an across-the-board doctrine, White v. Lee in other cases. Is that not so? So we have case law in which there's language that seems inconsistent with the Third Circuit's division here. The Ninth Circuit case law recognizes Nora Pennington applies in the antitrust context and outside the antitrust context only where there was petitioning activity under the right of petition. And I'm speaking of petitioning to the government. Okay. But this is my other problem. The First Amendment is the First Amendment. It has a petitioning provision. It also has a free speech provision. There's a case law that says that essentially the petitioning provision is any broader than the free speech provision. So why do we have a special rule when you're talking to the government? Why is Nora Pennington a special rule when you're talking to the government? How could that be grounded in the First Amendment when the First Amendment doesn't have a different standard for talking to the government and talking to other people? Well, in the Cottle case, K-O-T-T-L-E, which we cite, the Ninth Circuit held that the right of petition only applies to activity directed at the government and not at private organizations. But it isn't the right to petition. It's the right to free speech. But why does it come out differently? I'm not sure I understand what you mean when you say why does it come out differently. If this is constitutionally grounded, it has to be grounded in the First Amendment. Right. The First Amendment has two provisions, and they've been interpreted to be essentially coextensive. That is, my understanding of the case law on the right, not the Nora Pennington case law, but the more general case law on the right to petition, is that it is essentially a specification of the right of free speech, but it doesn't lead to any broader or different rights. That being the case, where would you get this distinction between talking to the government and talking to other people? Well, the right of free speech is also a right that refers to the government interfering. It has to be the government has to interfere with it, but it doesn't have to be speech to the government. You could make a – send me a letter, and you could – and I could say your letter is extortionate, and I could sue you, and you could say, well, I have a right of free speech to send you any letter I want. And I don't think that argument would have any weight. I understand that. And I may go too broadly, but I'm just trying to understand how, if you regard Nora Pennington as a constitutionally based doctrine, you would regard it as elevating some higher protection of speech when the general case law, you can't do that. I don't believe that the Nora Pennington doctrine has ever been applied to any First Amendment provision other than expressly the right of petition and expressly dealing with government lobbying. Talking about corporations lobbying the government for more favorable legislation is how it originated in the Nora and the Pennington cases and a line of cases after that. The question was whether that was anti-competitive activity if you essentially lobbied the government to get a more favorable law, the railroad industry versus the trucking industry. And I'm just asking a conceptual question. Go ahead. In this particular case, the only question is how far do you want to take the right of petition? The Tenth Circuit drew a line. It said, we don't see that the right of petition extends to a private letter from one citizen to another, threatening them and demanding that they pay money. And that seems to be a doctrine that's been adopted by other courts, as we cite, with the following exceptions. If you're required to send a letter, if it's a statutory requirement, such as in the primetime 24 joint venture case, where as part of the statute, you have to send a challenge, you have to make a pre-lawsuit challenge before you're allowed to file a lawsuit. Well, then it's essentially incident to filing a lawsuit. It's required. You have to do it. And it should be protected. Same thing in the Skano best case, where the court held that a cease and desist letter that's required prerequisite to a patent infringement. Again, that's protected by Norah Pennington. But the letters Direct TV sent, 150,000 demand letters to people who were complete strangers to them, essentially saying, we think you're stealing our piracy, or really saying you are stealing our signals. Pay us money. That's pretty much it.   I think it's a good way to do it. Thank you. I have another question. You're not arguing for a sham exception here, right? I'm sorry? You're not arguing a sham exception? No, I'm not. And why is that? I think I may. Well, to show a sham. Isn't that essentially what you're saying? You're saying that you have these plaintiffs. The plaintiffs say, I did not do any of the things they accused me of doing, and they had no information that I did. Right. So why isn't it a sham lawsuit? They're threatening a lawsuit, which, according to your version, they had all they had was that they had bought some device, which could be used to interfere with their TV signals, but also could be used for other purposes. And, as I understand it, they had no information that these people even had the direct TV, much less that they had ever used it to intercept. And they yet made statements in this letter saying that they're going to sue them for illegal activity. Now, why doesn't that come within the sham exception? I'm not saying it doesn't come within a sham exception, but the standard to prove it was a sham, from our perspective, is a lot more difficult for the plaintiffs to show than simply to proceed on the merits of the claim. I sort of feel like we have a hard question when there's an easier one. It's a little peculiar. Well, I think the easier, frankly, is the fact that Nora Pennington doesn't apply at all to a private demand letter and that there's no – But that comes out to – I mean, aside from my problem about the First Amendment and Nora Pennington, it comes – you get very strange results then. I mean, you're basically telling people to go file the lawsuit and don't warn anybody. No one's saying you can't send someone a letter. But if your letter is extortionate and constitutes a violation of RICO or some mail fraud or whatever, I mean, why should you be immune to liability? I think it's okay to extort by filing the same lawsuit that you could have threatened to file. No, because if you file the lawsuit and it's as equally frivolous as your letter, presumably you'll suffer Rule 11 sanctions or you'll be sued for malicious prosecution. So it's the same problem. I mean, the people may not have lawyers and they might not be able to defend. And if you file the lawsuit and then go to them and say, give me $3,500, it's exactly the same thing. What is the difference? Why are we putting a premium on not writing a letter? What we're doing is taking from an immunity conduct which is in violation of RICO and which has nothing to do with lobbying the government or petitioning for government assistance. I agree with you that filing a frivolous lawsuit should also be not protected. But it is going to be protected because filing a lawsuit is direct petitioning activity to the government. You're filing a lawsuit. So the case law apparently is there. The question is whether we should stretch the case law. I mean, it's tenuous enough to immunize filing the frivolous lawsuit. But to stretch that beyond that and now saying a shakedown letter which may never result in a lawsuit. More than half of these letters never result in lawsuits. And that's a fact we've alleged. And we can certainly amend it to allege further facts. We never got that chance. So ‑‑ But essentially, if we were to decide that Norpinning did apply, there would be ‑‑ would there still be a remand in the sham issue or not? We could allege that theory if we chose. Even in the complaint. How in the world can we remand it if you didn't even raise it? Well, we ‑‑ You didn't raise it in the complaint or anywhere else? Just because we should pull issues out of the air and remand on that case? No, the complaint clearly alleges that the letters are frivolous and that there's no basis for them. We didn't mention the word ‑‑ maybe they don't say the word sham specifically, but the facts are certainly in the complaint that would support application of a sham theory. I'd like to reserve the balance of my time. Thank you. Your Honors, good morning. May it please the Court. My name is Dale Oliver. With me is Mike Williams. We represent the respondent in this action. My comments today on oral submission will reach two issues. The first will be the proper application of the Petitions Clause of the United States as it pertains to the facts of this case. The second will be the race judicata preclusive effect of the decision in the California Court of Appeals for the same plaintiffs. First of all, as to the Petition Clause, the Court below did find that Nora Pennington application did immunize the pre-litigation demand letters at issue in this case. And the Court was looking to two principles, which it believed were established by the Ninth Circuit. First, that the protections accorded by Nora Pennington go beyond the antitrust context, and do in fact apply elsewhere. Also, looking the District Court specifically to a second line of cases, which finds that conduct incidental to the prosecution of a litigation is also deserving of the Petition Clause immunity. And I will come back to the Columbia Pictures case, which the District Court relied upon, because I believe it does establish a rule which contradicts the cartoons decision that's being urged by petitioners for adoption. In essence, then, the arguable extension that is being asked of this Court, or the conduct that's being looked at in terms of the District Court decision, is whether or not discussions incidental to the prosecution of a lawsuit between private parties, which occur prior to the filing of the lawsuit, are deserving of the same protection that were accorded by this Court for such communications that took place after the filing of the lawsuit. And that is a very limited question, which frankly is being, as a new matter, considered by this Court. As repeated in oral argument by petitioners, they asked this Court to accept cartoons decision of the Tenth Circuit. I believe there are three problems with that adoption by this Court. First, I believe it would require overruling the decision in Columbia Pictures. Second, the Tenth Circuit stands alone. Every other court, every other circuit that has considered this issue of pre-litigation demand letters has accorded Petition Clause protection for those communications. And third, it's just bad policy. It would encourage, the Cartoons Court, in essence, encourages ambush, because under their logic, the filing of a lawsuit would enjoy Petition Clause protection, but any discussion or notice in advance would not. And that simply does not make sense. The letter could be, well, this goes back to the sham exception, but the letter could be sham when the inviolable litigation wouldn't be. Absolutely, Your Honors, and I would, in addressing the sham issue, I would, I think there are three responses to why this need not concern this Court. First of all, the District Court found specifically that this was not sham litigation. Looking to the letters themselves and saying that... But the issue wasn't raised either in the complaint or, as I understand it, or in the briefs before us. Frankly, if I were to look at the sham issue, I'd have a much harder time. So should we be looking at it, and should they have an opportunity, suppose we agreed with everything else, should they have an opportunity to amend the complaint? Well, you'd be overruling the District Court on that issue, who specifically found – I was actually going to raise the three reasons why it doesn't apply. One, the District Court made a finding on that, looking at the letters themselves, the layout of the conduct. It's not a finding. It's a complaint. We're dealing with a complaint, right? So there's no finding that we're entitled to any... The judge independently, if you look at his decision, independently regarded the letters specifically and parsed the letters. Secondly, in the... But I'm asking, first of all, it was done on a motion to dismiss, right? To dismiss, sure. That is correct. Okay. Well, suppose that the person sending the letters knew that they were false, fraud. Isn't there a basis for finding fraud and sham in the allegations of this complaint on a motion to dismiss? Your Honor, the... First of all, the line of cases, Norm Pennington does recognize that the immunity does not apply to sham litigation. And that has been varyingly described as to what constitutes sham litigation. Here, the Court of Appeals in California examined extensively the conduct, looked to all of the allegations being raised by plaintiffs, the same plaintiffs who are here as petitioners, and concluded as to each of their points the number of lawsuits actually filed. For example, it's not in the record, but Petitioner has said that there were 150,000 letters sent out. Aren't you getting back to res judicata when you start talking about California? Absolutely. And I do believe that this case is barred by the primary rights application that the Ninth Circuit has consistently adhered to. You know, you were going to tell us three reasons that we shouldn't take up the sham issue. You've gotten to one. Would you very, in, say, ten words or less each, tell us what the other two are and then go on to the rest of it? Whatever else you want to go on. Second, the decision of the Court of Appeals in California, which became the final decision upon the third. And the third is that this issue specifically has not been raised by appellant. At page 11 of the opening brief, they specifically direct this Court away from the sham exception. It's been waived in the briefs before us even if it wasn't waived earlier. That's essentially what you're saying. I'm sorry? It's been waived in the briefs before us even if it wasn't waived earlier. That is correct. Cutting to the chase, the Columbia Pictures case, a portion of it, dealt with the issue of whether settlement discussions that took place between the two adverse parties after the filing of the lawsuit qualified for petition clause immunity. The Ninth Circuit, in its rendering, and although that issue was not specifically addressed by the Supreme Court, the Supreme Court did affirm Columbia Pictures, specifically held that that was conduct incidental to the prosecution of the lawsuit. Now, that was conduct that did not involve the court at all. That was simply settlement discussions between the parties. And the Ninth Circuit specifically ruled that it was conduct incidental. We are talking about, identically, conduct that may precipitate settlement discussions. The only difference between Columbia Pictures and the case at bar is that these took place in advance of the lawsuit. Now, the courts that have considered this, the commentators that have considered this, have said, we want to encourage these pre-demand letters, not discourage them. In fact, they number them. Kagan in the other direction, too. So it doesn't seem to me that we can really get anything from the Ninth Circuit cases. And there's the theo-fill decision, which has some language suggesting that if you're skeptical, that's opinion of the private parties in connection with private commercial litigation is within Nora Pennington. And there's another, I think there's a sentence in the Caro case, there's other sentences floating around, but certainly no decision. Well, they, there's a, the Cartoons case wants to distinguish itself, the Cartoons court wants to distinguish itself from all of the other circuits that have ruled the other way by saying those were antitrust, these are not. But if you look to first principles, going back and reading Nora, there's nothing in Nora that makes that. Well, if you look to first principles, as I was suggesting, I don't understand why it matters whether they're petitioning or not petitioning. Well, petitioning is petitioning to the, to the government. And so I, it is a. I know the First Amendment also protects speech that isn't to the government. So why does it matter, if we're going to the First Amendment, why does it matter? It is simply the expression of a different right. It's, it's in, yes, you're right, it is in the First Amendment, but it's, it's petitioning, not petitioning. It's, it has to be, as this Court properly found, conduct incidental to the prosecution of a lawsuit to come within California transports, which is the third of the triumvirate that Nora Pennington embraced in terms of the rights of our citizens to petition the government. But aside from commercial speech issues or whatever, if somebody just wrote a letter and it wasn't petitioning the government, there's still possibly a prescription on creating, on burdening that with liability. That's why we have the whole New York Times versus Sullivan doctrine and so on. Well, there, there is a separate body of law dealing with free speech, but I suggest that it is in fact, that's the reason why it's enumerated as a, as a separate right under the Constitution. Under the logic of your argument, there would be no need to talk about petitioning because free speech would otherwise embrace it. I suggest it is separate. The courts have treated it, have, have, have dealt, there's a body of law. My point is that if you look at Nora, if the, if the any, if the Sherman Act there had a special provision that gave increased rights to come to court by businesses, then in fact there would be a basis for saying, look, Nora Pennington is really antitrust. But point of fact, that's not what happened. What happened there is the Sherman Act was silent with regard to that issue. The court was saying, in order to keep it constitutional, we have to recognize that Sherman is limited by the Petitions Clause. It's, it's, it's actually baffling to me. The Ninth Circuit, I believe, has it right. The Ninth Circuit has applied Nora Pennington beyond antitrust. Okay. Cartoons just got it wrong. Are you going to, to, to address any of the raised, any of the very interesting Yes, ma'am. raised judicata questions here. Yes. There are, there are two cases which are absolutely determinative. The important case is the Los Angeles branch of NAACP decided by this court in 1984. It recognizes that California uses the primary rights analysis in terms of deciding race judicata effects. The primary rights analysis doesn't look just to the causes of action that are enumerated in the particular lawsuit. It looks at the fundamental conduct that is being examined. There are some useful quotes in there, and I'm at 750 F second, 731 at SEC. California rule does not mean that different causes of action are involved just because relief may be obtained under either state or federal law or under either of two legal theories. Further, it says, a plaintiff with a claim supported by both state and federal law may not bring separate actions on each ground. The first action precludes the second if the first court had jurisdiction to adjudicate both grounds. The U.S. Supreme Court has said that RICO is concurrent jurisdiction in both state and federal courts. Clearly, this was an opportunity available to the plaintiffs. And I really point out, these are the same, three of these plaintiffs are the same plaintiffs that were, had the rights fully adjudicated in California. What about the strange relationship between the cases where the federal judgment was actually first? Well, I would adopt the suggestion previously raised that at this juncture, if this court were to remand, there is a final judgment in existence now with regard to this specific matter, and that is in the state of California. And so if you were to remand, the district court would have to adhere to under ---- I don't know if you've looked at the case law about this, because we raised it, and it may be worth having supplemental briefs. But there is some case law regarding this order of things problem, which suggests that if the case that you're trying to make preclusive was actually the second judgment, since race judicata goes to the first judgment, that that doesn't work. It doesn't answer the question of what happens if there's a remand, and I don't know if there's any law about that. It's a mystery. Well, the oddity here in terms of timing is only because in California, there is no according final judgment status until all appeal rights are exhausted. But what you have is a full determination of rights of these same three plaintiffs on the same course of conduct. And so ---- Does it make any difference that the claims, the state law claims could not have been brought of right in federal court? They would have had to be pendent claims. Well, they could have been brought. They'd have to be pendent claims. Right. But if the district court, as it did, had dismissed these federal claims before trial, they almost surely never would have gotten to the state law claims. And there's case law on that, too. Well, Erin, I would point the Court, because I think for purposes of race judicata, you have to regard the Blanchard decision we have as the Sosa case as opposed to the Blanchard case. They were both ---- But the problem is it's really Sosa, too. That's what's so bizarre about it, according to the ---- It was filed. It was the earlier ---- It was filed first, but it was in terms of the strange dichotomy between race judicata rules. It went to judgment second. Perhaps I could ease this particular confusion by just calling it the Blanchard case, because that's how it's captioned in the books. Whatever it is, it's still second. And there ---- and this is actually the danger of allowing seriatim bites at the apple, because there it was important to the Court that plaintiff had conceded, and the Court specifically addresses, that the letters fell within the protection of the petition clause. Now, that, of course, is the very issue that's being challenged here. But if you look ---- But you could have pled race judicata, presumably, in the Court of Appeals and didn't. The ---- let's see. Again, we have to go back to the timing of this. You could have done, in the case of the State Court of Appeals, exactly what was done here. As soon as the federal judgment came out, you could have pled race judicata, no? But I don't see that that's relevant at this juncture. For examined, what would happen, what does the district ---- if this Court were to remand back to the district court, it is essentially a reopening of the case. This is something I've never understood. But we still have a federal rule that says that it's the federal court judgment, and what happens when you reopen it? I don't know. In other words, what I'm saying, there is no condition that is possible here that doesn't lead to the State Court being the first, final judgment. Well, sure there is. I mean, I don't know if we can reach the merits and affirm. Well, no. I actually would ---- I want you to affirm this report. My question is, do we do it on race judicata grounds, or do we do it on the merits, or do we reverse, and what happens if we reverse? Well, I would actually ---- I would urge the Court. The second race judicata case, which is very close to the facts of this case, is the Monterey Plaza Hotel case, more recently decided than NAACP. And in that case, the Court actually considered both the merits and the race judicata effect. This is the ---- there have been, by this, by ---- my brother counsel has raised the issue of these demand letters on six separate occasions in different courts. And I actually believe there would be tremendous benefit by having an expression of views with regard to the proper reach of the petition clause, as well as a decision on the race judicata. And just as the Court in the Ninth Circuit in Monterey Plaza Hotel expressed views on both independent points, I would urge this Court to do so as well. Are there any further questions, Your Honors? Thank you. Well, I obviously think that's a good idea, too, that you reach the merits, although perhaps with a different result than my opponent would like to see. Either way, don't you lose? No, because ---- In other words, if we reverse, the judgment is gone and the California judgment is first. Yeah, but in the ---- I don't see how you can win this case. Because if you remand to the district court, one of the problems in the Monterey Plaza case, which I do discuss in my supplemental brief, is that there was no attempt to explain in the Federal court why the RICO claim wasn't brought earlier. And there was no discussion of this anomaly of the anti-slap motion freezing the status of the complaint. It may well be the case that we can amend the pleading in the Federal court and explain why we didn't bring it, and then the Federal district judge can make the decision in the first instance whether or not the injustice exception to base judicata applies. Now, you can make that decision in the first instance as well, but it doesn't necessarily have to be made on this level. It could go back to the district court, and the district court can do that. If we reverse, the judgment in the trial court is gone, isn't it? The dismissal is gone, yes. Yes? And so there's no judgment there. Right. And when it goes back to the trial court, they're going to have to look at the California decision as race judicata. Not under the exception for race judicata for an inequitable situation where we did not have a reasonable opportunity to plead the RICO claim in the first instance. And it would not make sense to require that. It would have all the negative effects that would have in the Federal court system, for one thing, which I'm sure Your Honor can appreciate. I think I understand your argument. Thank you. Thank you, Your Honor. Thank you all. Very interesting. Thank you, counsel, for useful arguments. The case of Sosa v. Direct TV is submitted.
judges: Fernandez, Berzon, Panner